## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                    )
**JANICE STEVENSON,**               )
                                    )
    **Plaintiff,**                  )
                                    )          **Civil No.**
    **v.**                          )          **15-13505-FDS**
                                    )
**AMAZON.COM, INC. and**            )
**SECURITY INDUSTRY SPECIALISTS, INC.,**  )
                                    )
    **Defendants.**                 )
_____)

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO
## CERTIFY AND DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

On October 5, 2015, plaintiff Janice Stevenson filed a self-prepared complaint against her

employer, Security Industry Specialists, Inc. ("SIS"), and Amazon.com, Inc.  It appears that

Stevenson is employed by SIS as a security specialist working the night shift on Amazon

property in Cambridge, Massachusetts.  The complaint asserts causes of action for, among other

things, retaliation under Title VII of the Civil Rights Act of 1964; violations of her Fourteenth

Amendment rights to due process and equal protection; violations of the Massachusetts

Constitution; violations of Mass. Gen. Laws ch. 149 §§ 148 and 150; and violations of the Eighth

Amendment right against cruel and unusual punishment.  Plaintiff alleges that this Court has

diversity jurisdiction because the defendants are citizens of other states.

Plaintiff has moved the Court to certify questions of state law to the Massachusetts

Supreme Judicial Court.  Defendant SIS has moved to dismiss the complaint under Fed. R. Civ.

P. 12(b)(1) and 12(b)(6), contending that all of plaintiff's claims are either moot or barred as a

matter of law.  The original complaint remains the operative complaint in this action.  However, because plaintiff is proceeding *pro se*, the Court will deem the factual allegations in plaintiff's opposition memorandum and surreply to be part of the complaint for purposes of resolving defendant's motion to dismiss.[1]

For the foregoing reasons, plaintiff's motion to certify will be denied, and defendant's motion to dismiss will be granted.

## I.    <u>Factual Background</u>

The facts are as stated in the complaint and in plaintiff's briefing materials in opposition to defendant's motion to dismiss.

Defendant Security Industry Specialists, Inc. provides contracted security staff for businesses, including for Amazon.com, Inc. in Cambridge, Massachusetts.  (Compl. ¶¶ 4-7).  Plaintiff Janice Stevenson is a security specialist employed by SIS at the Amazon work site.  (*Id.* ¶ 2).

The dispute appears to arise from a written warning directed to Stevenson in an "Employee Counseling Form" ("ECF") prepared by SIS supervisors on September 30, 2015, and placed in her personnel file.[2]  It appears that on September 27, 2015, Stevenson was asked by a supervisor to patrol the seventh floor of the Amazon property along with a co-worker, Nicole Washington.  Stevenson had completed half of the patrol when she was told to finish patrol of the rest of the floor.  She refused to do so on the ground that she had to go to the eleventh floor to guard an area, and she told her supervisor that Washington should patrol the seventh floor

---

[1] Specifically, and for present purposes only, the operative complaint will be deemed to be (1) the allegations of the original complaint; (2) the factual allegations of the opposition to the motion to dismiss; and (3) the factual allegations of plaintiff's surreply to the motion to dismiss, all taken together.

[2] Attached to the complaint were a number of exhibits, including the Employee Counseling Form, three Daily Activity Reports, and various correspondence.

instead.  As a result of that conversation, Stevenson was cited for insubordination and failure to perform work duties.  She contested the citation, contending that she had dual responsibilities for patrolling both the seventh and eleventh floors and thus had received conflicting assignments. She further alleges that it was Washington who refused to patrol the seventh floor and that her supervisor showed favoritism toward Washington.

In her opposition to the motion to dismiss, Stevenson states that she "had no disciplinary issues until after filing an initial complaint against [three SIS supervisors] on August 9, 2015, . . . for unsubstantiated discipline action against Plaintiff and the vicious harassment of Security Specialist Sasha Smith."  (Pl. Opp. 4, ¶ 3).  Stevenson contends that the information in the ECF was false and that SIS has refused to allow her access to that form, any investigatory documentation upon which it relies, and has "denied Plaintiff direct evidence to disprove allegations and [refused to] expunge the Employee Counseling Form" from her employee record. (Compl. ¶ 32).  She further contends that surveillance video of the property, which she alleges is currently in the possession of Amazon, will disprove the assertions against her.

On August 18, 2015, Stevenson filed another written complaint regarding the use of "anti-Semitic and racial animus [display of a swastika and use of racially motivated speech] among white male security specialists" at her work site.  (*Id.* ¶ 17).  It is not clear whether her complaint concerning the ECF is related to her complaint of apparent racial harassment.

The complaint also makes various general complaints about the way SIS is operated.  For example, Stevenson contends that SIS policy is to fire any security specialist working the night shift who sleeps at his or her post.  That policy, Stevenson alleges, does not apply to day shift or swing shift workers.  In addition, she contends that SIS fails to take measures to ensure that security specialists remain alert.  She further asserts that there is no appeal procedure for

disciplinary action, no "predictable management," and no "right to know job expectations" and consequences.

The complaint separately alleges that SIS pays its security specialists on a semi-monthly basis, instead of bi-weekly as required by Massachusetts law.  (*Id.* ¶ 46).  In her surreply, Stevenson states that she was "fired for complaining about unpaid wages."  (Pl. Sur. 3).

It is not clear whether plaintiff continues to be employed by SIS.  Her opposition memorandum asserts that she was "discharged" by SIS, (Pl. Opp. at 7), and her surreply memorandum requests back pay and front pay for "retaliatory discharge."  The complaint itself, however, does not indicate whether plaintiff was fired from her job or continues to work at SIS.

## II.   Procedural History

The original complaint asserted seven claims against defendants SIS and Amazon: (1) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); (2) violation of the Due Process Clause of the Fifth Amendment of the United States Constitution; (3) violation of the Sixth Amendment; (4) violation of the Equal Protection Clause of the Fourteenth Amendment; (5) violation of the Equal Rights Amendment of the Massachusetts Declaration of Rights, Mass. Const. Pt. 1, art. I; (6) violation of the Massachusetts Personnel Record Law, Mass. Gen. Laws. ch. 149, § 52C; and (7) violation of Mass. Gen. Laws ch. 149, §§ 148, 150.

As relief, Stevenson sought copies of all policies and regulations of SIS; expungement of her records relating to the ECF; $75,000,000 in damages in connection with the whistleblower claim; relief from the allegedly cruel and unusual punishment of night-shift workers; timely payment of wages; equal protection from "Draconian labor practices"; and the right to present a defense pursuant to the Fifth Amendment Due Process Clause.  (*See id.* at 9).

The Court dismissed all claims against defendant Amazon and all claims against SIS

arising under the U.S. Constitution in an order dated February 22, 2016.  (D. 21).  Defendant SIS

filed a motion to dismiss the remainder of plaintiff's claims on March 22, 2016.  In her

opposition memorandum, plaintiff appears to assert a claim for retaliatory discharge under the

Massachusetts Whistleblower Act, Mass. Gen. Laws ch. 149, § 185.

## II.      Motion to Certify

Stevenson has asked the Court to certify the questions of state law presented by her

claims to the Massachusetts Supreme Judicial Court.  Federal courts can certify questions to the

SJC in cases where there is no controlling precedent and where the questions may be

determinative of the pending cause of action.  *In re Engage, Inc.*, 544 F.3d 50, 52 (1st Cir. 2008).

Here, however, the legal issues presented are neither complex nor difficult, and "the course [the]

state court[ ] would take is reasonably clear."  *Nieves v. University of Puerto Rico*, 7 F.3d 270,

275 (1st Cir. 1993).  Under the circumstances, Stevenson's motion to certify will be denied.

## III.     Motion to Dismiss

### A.      Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and

give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must

be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A document filed by a *pro se* party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  However, while "[p]ro se complaints are accorded an 'extra degree of solicitude . . . .' even a pro se plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 U.S. Dist. LEXIS 12817, at *6-7 (D. Mass. January 15, 2009) (quoting *Adams v. Stephenson*, 1997 U.S.App. LEXIS 15371, at *2 (1st Cir. June 23, 1997)).

**B.**   **Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)**

Title VII makes it an unlawful act for an employer "to discriminate against any [individual] . . . because he has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a).  It is also a violation of Title VII to require an employee "to work in a discriminatorily hostile or abusive environment." *Valentin–Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 94 (1st Cir. 2006) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)).  The complaint alleges that SIS retaliated against Stevenson based on her various complaints concerning pay issues, disciplinary policies, and "anti-Semitic and racial

animus" displayed by some SIS employees.  (*See* Compl. ¶¶ 17-20).  It is unclear whether Stevenson intends to allege a claim under Title VII for a hostile work environment based on the allegations of the "display of a swastika and use of racially motivated speech."  (Compl. ¶ 17).

Title VII requires that an aggrieved employee follow certain administrative procedures as a prerequisite to commencing a civil action.  *See Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir. 2009).  The administrative process begins with the filing of an administrative charge before the EEOC or its state analogue (here, the Massachusetts Commission Against Discrimination).  *See Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 85 (1st Cir. 2008).  The employee may sue in federal court only if the EEOC dismisses the administrative charge, or if it does not bring civil suit or enter into a conciliation agreement within 180 days of the filing of the administrative charge.  42 U.S.C. § 2000e–5(f)(1); *see also Franceschi*, 514 F.3d at 85.  "In either case, the EEOC must send the employee notice, in the form of what is known as a right-to-sue letter."  *Franceschi*, 514 F.3d at 85.  After receiving that notice, the employee has ninety days to bring suit in federal court.  42 U.S.C. § 2000e–5(f)(1).

Under Title VII, the "unexcused failure to exhaust administrative remedies effectively bars the courthouse door."  *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005). "Administrative remedies [can]not be considered to [be] exhausted . . . until the EEOC issue[s] [the plaintiff] a right-to-sue-letter."  *Franchesci*, 514 F.3d at 85 (citing 42 U.S.C. § 2000e– 5(f)(1)).  Plaintiff does not appear to have received a right-to-sue letter prior to filing suit here, and has therefore failed to exhaust her administrative remedies as the law requires.  Defendant's motion to dismiss plaintiff's claims for violations of Title VII will therefore be granted without prejudice to plaintiff renewing her claims when and if she has exhausted her administrative remedies.

C.     Violation of Equal Rights Amendment to the Massachusetts
       Declaration of Rights, Mass. Const. Pt. 1, art. 1

The complaint next asserts a claim under the Equal Rights Amendment to the

Massachusetts Declaration of Rights.  Article 106 of the Amendments to the Constitution,

commonly referred to as the Equal Rights Amendment, amended Article 1 of the Declaration of

Rights to state, in relevant part, that "[e]quality under the law shall not be denied or abridged

because of sex, race, color, creed or national origin."  *Doe v. Acton-Boxborough Reg'l Sch. Dist.*,

468 Mass. 64, 67 (2014).[3]  "All people in the Commonwealth are guaranteed the right to equal

protection of the laws by the United States Constitution and the Massachusetts Declaration of

Rights."  *Commonwealth v. Weston W.*, 455 Mass. 24, 30 (2009) (citing Article 106 and

Article 1).

The complaint alleges that SIS immediately terminates any "grave[yard] shift (11:00 p.m.

to 7:45 a.m.) security specialists who sleep on post."  (Compl. ¶ 21).  The complaint further

alleges that the policy does not apply to day or swing shift employees.  (*Id.* ¶ 22).  The

constitutional guarantee of equal protection of the laws, however, applies to state laws and

statutes—not to internal policies created by private employers.  *See Weston W.*, 455 Mass. at 30;

Mass. Const. Pt. 1, Art. 1 ("Equality *under the law* shall not be denied . . . .") (emphasis added).

A private employer's differential treatment of members of the graveyard shift may not be

challenged under either a federal or state equal protection analysis.  Accordingly, defendant's

motion to dismiss plaintiff's claim under the Massachusetts Declaration of Rights will be

_____

[3] As a technical matter, Article 106 of the Amendments to the Constitution annulled the existing language
of Part 1, Article 1, of the Declaration of Rights and replaced it with the current Article 1, which reads in full:

   All people are born free and equal and have certain natural, essential and unalienable rights;
   among which may be reckoned the right of enjoying and defending their lives and liberties; that of
   acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety
   and happiness. Equality under the law shall not be denied or abridged because of sex, race, color,
   creed or national origin.

granted.

**D.      Violation of the Massachusetts Personnel Record Law,
            Mass. Gen. Laws. ch. 149, § 52C**

The complaint also asserts a claim that SIS's placement of the Employee Counselling

Form in her employment record violated Mass. Gen. Laws ch. 149, § 52C, and requests

expungement of the form from her record as a remedy.  Compl. ¶¶ 27-33.  SIS contends that

§ 52C does not allow for a private right of action.   Under the statute, "[i]f an employer places in

a personnel record any information which such employer knew or should have known to be false,

then the employee shall have remedy through . . . judicial process to have such information

expunged."  Mass. Gen. Laws ch. 149, § 52C.  Massachusetts courts have clearly held that the

statute "provides employees with the opportunity to comment, correct, or expunge incorrect or

false information contained in personnel files that pertain to them."  *Kessler v. Cambridge

Health All.*, 62 Mass. App. Ct. 589, 597 (2004); *Martelli v. Town of N. Attleborough*, 77 Mass.

App. Ct. 1109, at *1 n.3 (2010).

SIS further contends that plaintiff's claim is moot, and, in support, has submitted a sworn

affidavit from its Director of Human Resources stating that the counselling form at issue has

been removed from Stevenson's employment record.  (Venturini Aff. ¶ 4).  However, on a

motion to dismiss, the Court may not consider that affidavit without converting the motion into

one for summary judgment.  *See* Fed. R. Civ. P. 12(d); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.

1993) (listing exceptions).  Accordingly, defendant's motion to dismiss will be denied without

prejudice to SIS renewing its argument that the claim is moot in a motion for summary judgment

under Fed. R. Civ. P. 56.

**E.      Violation of Massachusetts Payment of Wages Statute,**
**Mass. Gen. Laws ch. 149, §§ 148, 150**

Finally, the complaint alleges that SIS violated the Massachusetts Payment of Wages statute, Mass. Gen. Laws ch. 149, § 148, by paying plaintiff's wages on a semi-monthly basis instead of bi-weekly, and by failing to pay her wages within six days of the each pay period.

SIS does not contest that it paid wages on a semi-monthly basis, but contends that the claim is now moot because (1) it switched to a bi-weekly pay period on March 4, 2016 (after the filing of the complaint) and (2) it sent plaintiff a check for an amount above and beyond what it calculates she is owed in damages.  Plaintiff states that she has not accepted SIS's settlement offer and "is in the process of returning" the check sent to her.  Pl. Sur. ¶¶ 1-2.  "[A]n unaccepted settlement offer or offer of judgment does not moot a plaintiff's case . . . ."  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), *as revised* (Feb. 9, 2016).  That is especially true where, as here, the parties dispute the amount of damages to which plaintiff is entitled.  Accordingly, defendant's motion to dismiss plaintiff's claim as moot will be denied.

However, "[u]nder Section 150, an employee's private right of action is conditioned on the filing of a complaint with the Massachusetts Attorney General."  *Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17, 27 (D. Mass. 2011) (listing cases).  The complaint does not allege that plaintiff has filed any complaint with the Attorney General, as ch. 149, § 150 requires.  Her claim under the Payment of Wages Statute will therefore be dismissed without prejudice to its renewal once she has satisfied the statutory requirement.

**F.      Violation of Massachusetts Whistleblower Statute,**
**Mass. Gen. Laws ch. 149, § 185**

It is not clear whether plaintiff is asserting a claim under the Massachusetts Whistleblower Statute, Mass. Gen. Laws ch. 149, §185.  Although the complaint does not appear

to allege a claim under that statute, plaintiff discusses it at length in her opposition to the motion to dismiss.  *See* Pl. Opp. 8-10.  In any event, that statute applies only to public employers, and does not protect employees from retaliation by private employers such as SIS.  *See Bennett v. City of Holyoke*, 362 F.3d 1, 5 (1st Cir. 2004); Mass. Gen. Laws ch. 149, § 185(a)(2).  Thus, to the extent that plaintiff does seek to maintain a claim under the whistleblower statute, that claim will be dismissed.

## IV.    Conclusion

For the reasons set forth above, plaintiff's motion to certify questions of state law to the Massachusetts Supreme Judicial Court is DENIED.  Defendant's motion to dismiss the complaint is GRANTED in part and DENIED in part.  Specifically,

(1) Defendant's motion to dismiss plaintiff's claims under Title VII and the Massachusetts Payment of Wages Statute, Mass. Gen. Laws ch. 149, §§ 148, 150, is GRANTED.  Those claims are dismissed without prejudice to their renewal once plaintiff has exhausted her administrative remedies.

(2) Defendant's motion to dismiss plaintiff's claim under the Equal Rights Amendment to the Massachusetts Declaration of Rights is GRANTED.

(3) Defendant's motion to dismiss plaintiff's claim under the Massachusetts Personnel Record Law, Mass. Gen. Laws. ch. 149, § 52C, is DENIED.

(4) Defendant's motion to dismiss plaintiff's claim under the Massachusetts Whistleblower Statute, Mass. Gen. Laws ch. 149, § 185, is GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
Dated: May 13, 2016                              United States District Judge